In re AMERICAN LEASING AND ACCEPTANCE CORPORATION OF LAKELAND, and Acceptance Corporation, Consolidated Debtors.

Bethann Scharrer, Liquidating Trustee, Plaintiff,

v.

The Department of Treasury–Internal Revenue Service, William B. Johnson, David A. Johnson, Charlene Johnson, and Melody Johnson, Defendants.

Bankruptcy Nos. 94–04647–8P1, 94–06262–8P1.
Adversary No. 96–1199.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 26, 1997.

756

Marsha Griffin Rydberg, Tampa, FL, for plaintiff.

Philip Doyle, Department of Justice, Washington, D.C., Charles R. Wilson, United States Attorney, Tampa, FL, for I.R.S.

P. David Pobjecky, Winter Haven, FL, for William B. Johnson.

Joel S. Treuhaft, Oldsmar, FL, for defendants/Johnsons.

## ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDG-MENT (Doc. # 52)

ALEXANDER L. PASKAY, Bankruptcy Judge.

This cause came on for hearing upon the Motion for Partial Summary Judgment filed on August 7, 1997 by Bethann Scharrer (Liq-uidating Trustee) in the above-captioned adversary proceeding. The Liquidating Trustee requests that this Court determine as a matter of law that a portion of the payments made by American Leasing and Acceptance Corporation and American Leasing and Acceptance Corporation of Lakeland (Debtors) to certain investors (Investors) are interest, which is deductible by the Debtors for income tax purposes for the tax years 1991 through 1994. The Liquidating Trustee contends there are no material facts in dispute on the issue of the interest expense deduction and, therefore, summary judgment in her favor is appropriate. The Court reviewed the Motion and the record. and finds as follows:

This Motion is directed to a part of the claim set forth in Count I of the Liquidating Trustee's Complaint, specifically, Paragraph 18(j) which states,

> The IRS calculated the interest deductions for 1991 through 1994 incorrectly in that no deduction was allowed for tax years 1991 and 1992 and the deduction allowed for 1993 and 1994 was too small.

The relief sought by the Liquidating Trustee is a declaration by this Court that the Debtor was entitled to an interest expense deduction on its corporate income tax return for the years 1991 up to and including 1994. The Liquidating Trustee contends that Internal Revenue Cede § 163 permits payment of interest as a deductible expense. Further, she contends that a portion of the repayment to the Investors should have been deductible by the Debtors as an interest expense.

What really makes the relief sought unusual and unique is that for tax years 1991 and 1992, the Debtors claimed no interest expense deductions but did, however, claim the deductions for tax years 1993 and 1994. After an examination by the IRS, a determination was made that the interest expense claimed as a deduction on the 1993 and 1994 tax returns was allowable. Thus, there appears to be no real case or controversy since the Government did not disallow any interest expense deductions claimed by the Debtors. Thereafter, the Liquidating Trustee did not

file an amended return for the years 1991 and 1992.

Notwithstanding, it is the Liquidating Trustee's contention that even though there is technically no objection to the Government's claim on record, she is entitled to seek a determination by this Court that the income expense should have been deducted by the Debtor on the 1991 and 1992 tax returns. Further, the Government's claim for those years should be adjusted by deducting these expenses from the taxable earnings of the Debtor. According to the Liquidating Trustee, these facts are sufficient to present a "case or controversy" which is a condition precedent to this Court's jurisdiction to consider the Motion under consideration.

For the sake of judicial economy, this Court will consider the issue raised by the Liquidating Trustee rather than await the filing of an amended return claiming a deduction for interest expense by the Liquidating Trustee which would possibly lead to a challenge of the Government's disallowance. The facts of the particular issue at hand are as follows:

At the relevant time, one or both of the Debtors owned and operated a used car lot in Lakeland, Florida. In order to obtain funds needed to purchase used cars at the car auction, the Debtors solicited funds from individuals, not institutions lenders. These individuals were referred to as investors. The Debtors had available lists of certain contracts with customers and the interested Investor would select a specific car contract. The cars purchased were either sold or leased to customers.

The transactions with the parties who advanced the funds to the Debtors is the crux of the controversy which were described sometimes as "investments" and other times as "sales and purchases" of the automobile. According to the Liquidating Trustee, these investments were loans and the payments made to the Investors were clearly a misnomer since none of them acquired an equity security interest (i.e. stock in the Debtor's corporation). However, these investments did include an interest component which, according to the Liquidating Trustee, should have been claimed as a proper business expense deduction. According to the document in the record, specifically the Affidavit of Ferguson, the Debtors assigned the lease payments to the particular Investor.

It is without dispute that if a particular contract which was assigned went into default, the Debtor was required to substitute another contract of equal or greater value or would pay the contract in full, giving the Investor full recourse on the contract. Further, all contracts assigned were guaranteed by the Debtors. (Affidavits of Glenn, Higgins, Stinson and Ferguson). Subsequently, some investors were issued 1099–INT Forms and did, in fact, pay income tax on the interest they received from the Debtor. Some Investors perfected a security interest in the cars for which they advanced funds in order to enable the Debtor to make the purchase. There is no evidence in this record that any of the Investors acquired an ownership interest in the particular car they financed. In fact, the Debtors were only purchasing the lease payments called for under the lease and title to the vehicle remained with the Debtors. None of the purchasers or lessees of the car had any dealing with the Investors. Rather, the Debtor handled all matters such as billing, collection, repossession, etc, with their customers and the Investors simply received monthly checks from the Debtors. In addition, there is nothing in this record to indicate that the Investors bought anything from the Debtors. The Investors wore consistently treated by the Debtors as if the funds they advanced were loans.

It is undisputed, therefore, that (1) the ownership of the vehicles purchased by the Debtors with the funds obtained from Investors was not transferred to the Investors; (2) the Debtors remained liable on the contracts by virtue of their guarantees; (3) the Debtors bore the risk of loss or damage to the vehicles; (4) the Investors had no dealings with the lessors or the purchasers of the vehicles and all installment payments were made to the Debtors who in town were required to pay the agreed amount to the Investors as reflected by the assignment of leases; (5) when the purchaser or the lessee of the vehicle defaulted on the contract, the vehicle was repossessed by the Debtors and

not by the investor, at which time the Debtor had the right to resell or release the vehicle in question; and (6) there is evidence in this record that some investors did, in fact, pay taxes on the interest they received using the 1099–INT form.

However, the Government contends that there remains genuine issues of material facts in dispute. Although the Liquidating Trustee contends that all investors were routinely provided 1099–INT Forms, there is evidence from the record that some Investors, in fact, did not receive these forms from the Debtors. In addition, the Government disputes whether (1) the Investors reported and paid tax on the payments they received from the Debtor; (2) the loans were treated in the transaction as loans or as sales of chattel paper consisting of notes or leases; (3) any mistake, undue influence, fraud or duress existed; (4) Investors received all payments due prior to the bankruptcy; and, (5) the amounts the Investors reported they were paid were accurate.

In view of the foregoing, this Court is satisfied that genuine issues of material fact remain in dispute and, therefore, Paragraph 18(j) of Count I of the Complaint cannot be decided as a matter of law. Plaintiff's Motion for Partial Summary Judge, therefore, should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion for Partial Summary Judgment by the Plaintiff, be and the same is hereby denied.

DONE AND ORDERED.